# In the United States Court of Federal Claims

No. 11-502C
Filed: February 29, 2012
**TO BE PUBLISHED**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| KENNEY ORTHOPEDIC, LLC, | Misrepresentation in the Inducement to Contract; |
| and | Good Faith and Fair Dealing; |
| JOHN M. KENNEY, | Failure to Plead Fraud with Required Specificity, RCFC 9(b); |
| Plaintiffs, | Motion to Dismiss for Lack of Jurisdiction, RCFC 12(b)(1); |
| v. | Motion to Dismiss for Failure to State a Claim, RCFC 12(b)(6). |
| THE UNITED STATES, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**James M. Morris,** Morris & Morris, P.S.C., Lexington, Kentucky, Counsel for Plaintiffs.

**David A. Harrington,** United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

### MEMORANDUM OPINION AND ORDER

**BRADEN,** *Judge.*

## I.   RELEVANT FACTUAL BACKGROUND.[1]

Kenney Orthopedic, LLC ("Kenney Orthopedic") provides prosthetic and orthotic devices and services.  Compl. ¶¶ 2-3.  On August 15, 2006, Kenney Orthopedic entered into Contract No. V249-P-0011 (the "August 15, 2006 Contract") with the Department of Veterans

---

[1]   The relevant facts are derived from Plaintiffs' August 5, 2011 Complaint ("Compl.") and Exhibits A-D attached thereto, as well as two prior decisions of this court in related cases, *Kenney Orthopedic, LLC* v. *United States*, 83 Fed. Cl. 35 (2008) ("*Kenney I*") and *Kenney Orthopedic, LLC* v. *United States*, 88 Fed. Cl. 688 (2009) ("*Kenney II*").

Affairs ("VA"), to supply prosthetic and orthotic devices and services to the VA Medical Center in Lexington, Kentucky. *See Kenney II*, 88 Fed. Cl. at 691; *see also* Compl., Ex. A at 1.

Thereafter, a dispute arose between Kenney Orthopedic and the VA regarding the August 15, 2006 Contract. *See Kenney I*, 83 Fed. Cl. at 36-41; *Kenney II*, 88 Fed. Cl. at 691-95. The VA asserted that Kenney Orthopedic's performance did not comply with the specifications of the August 15, 2006 Contract. *See Kenney II*, 88 Fed. Cl. at 691-95. Kenney Orthopedic maintained that the VA's view was unsupported, requested that an independent party investigate the situation, demanded an acknowledgment of the VA's efforts to defame it, and alleged that the VA violated the August 15, 2006 Contract. *Id.* at 693-95. On October 23, 2007, the VA terminated the August 15, 2006 Contract for cause, pursuant to FAR 52.212-4(m), because Kenney Orthopedic had failed to respond to an August 29, 2007 "cure notice." *Id.* at 695.

On January 2, 2008, Kenney Orthopedic filed suit in the United States Court of Federal Claims alleging one breach of contract claim and three tort claims. *See Kenney I*, 83 Fed. Cl. at 41; *see also* Compl., Ex. A at 1. On August 7, 2008, the three tort claims were dismissed for lack of jurisdiction and the breach of contract claim was dismissed, without prejudice, because Plaintiffs had not yet satisfied the Contract Disputes Act's jurisdictional prerequisite that Kenney Orthopedic submit a certified claim to the Contracting Officer ("CO") before bringing suit in the United States Court of Federal Claims. *See Kenney I*, 83 Fed. Cl. at 46. On August 28, 2008, Kenney Orthopedic filed a suit in Kentucky state court, based on the same underlying dispute, against four VA employees, including Ms. Peggy Allawat. Compl., Ex. A at 1. That case was removed to the United States District Court for the Eastern District of Kentucky on October 1, 2008, and the United States was substituted as a defendant for all of the VA employees, except Ms. Allawat, on October 14, 2009. Compl., Ex. A at 1-2; *see also* Compl. ¶ 3.

On January 16, 2009, Kenney Orthopedic filed a second Complaint in the United States Court of Federal Claims, this time alleging claims for breach of contract and breach of the implied covenant of good faith and fair dealing. *See Kenney II*, 88 Fed. Cl. at 696. On August 17, 2009, the court issued a Memorandum Opinion and Order determining that: Kenney Orthopedic's claims were not barred by the statute of limitations; the court had jurisdiction over Kenney Orthopedic's breach of the implied covenant of good faith and fair dealing claim; and the January 16, 2009 Complaint stated a claim for which relief could be granted. *Id.* at 701-02, 704-05.

To resolve these lawsuits, the United States and Kenney Orthopedic engaged in settlement negotiations resulting in a May 31, 2011 Settlement Agreement. *See* Compl., Ex. A ("Settlement Agreement"). Pursuant to the terms of the Settlement Agreement, Kenney Orthopedic agreed to dismiss all outstanding claims against the Government, including any political subdivisions, officers, agents, or employees. Compl., Ex. A at 3-4. In exchange, Kenney Orthopedic received a $200,000 monetary payment, together with other guarantees set forth in an Addendum to the Settlement Agreement. Compl., Ex. A at 2, 13-14 ("Addendum"). Thereunder, the VA agreed to: (1) add Kenney Orthopedic to "its list of contract vendors for prosthetics at the Lexington VA Medical Center," within 10 days of execution of the Settlement Agreement or on June 1, 2011, whichever was later; (2) treat Kenney Orthopedic "in the same fashion as other similarly situated offerors in the solicitation for any future contract;" and (3)

"designate a Contracting Officers' [sic] Technical Representative (COTR), other than [Ms.] Peggy Allawat, [as the VA contact] for future interaction with [Kenney Orthopedic]." Compl., Ex. A at 13.

On June 3, 2011, *Kenney I* and *Kenney II* were dismissed, with prejudice, following the parties' execution of the Settlement Agreement. *See* Stipulation of Dismissal, *Kenney Orthopedic, LLC* v. *United States*, No. 09-38C, (Fed. Cl. June 3, 2011), ECF No. 86.

On June 16, 2011, a VA staff meeting was held that was attended by Ms. Allawat, Mr. Rick Sprinkles, an Orthotist, and Mr. Kurt A. Keeton, a Certified Orthotist. *See* Compl. Exs. B (affidavit of Mr. Sprinkles), C (affidavit of Mr. Keeton). These affidavits attest that, at the June 16, 2011 meeting, Ms. Allawat stated that "only prosthetic patients who [had] an existing history of care" with Kenney Orthopedic could use its services. Compl., Ex. B; *see also* Compl., Ex. C. In addition, Ms. Allawat expressed her view that the next VA solicitation for bids should be stated in a manner that would be unfavorable to Kenney Orthopedic and favorable to two other vendors. Compl., Exs. B-C. Ms. Allawat, however, also made clear that only a new list of vendors, that included Kenney Orthopedic, should be used in the clinic. Compl., Exs. B-C.

On July 11, 2011, Ms. Dawn Greene-Lowry, the VISN 9 Prosthetic Manager for the VA, sent a memorandum to the Lexington, Kentucky Prosthetic Staff directing them to treat Kenney Orthopedic "as if it were a prosthetics contract provider for the near future" and advising the VA staff not to tell patients that only patients with a prior relationship with Kenney Orthopedic could use its services. Compl., Ex. D. This Memorandum also designated Mr. Jason Hurt as the contact person for any future issues involving Kenney Orthopedic. Compl., Ex. D.

## II.    PROCEDURAL HISTORY.

On August 5, 2011, Kenney Orthopedic filed a third Complaint in the United States Court of Federal Claims alleging that the Government breached the Settlement Agreement by: "intentionally diverting patients from Kenney," restricting VA patients from being able to obtain Kenney Orthopedic's services and failing to add Kenney Orthopedic to the VA's list of contract vendors, within the required time frame. Compl. ¶¶ 10-11, 15 (allegations regarding failure to add Kenney Orthopedic to list of contract vendors); *see also* Compl. ¶¶ 26-32 ("breach of contract claim"). In addition, the August 5, 2011 Complaint alleges that the VA breached the implied covenant of good faith and fair dealing intentionally by diverting VA patients away from Kenney Orthopedic and interfering with Kenney Orthopedic's ability to provide the services. Compl. ¶¶ 33-43 ("good faith and fair dealing claim").

The August 5, 2011 Complaint also alleges that the Government: made misrepresentations to Plaintiffs "with regard to certain actions on the part of the United States, and certain protections that would be afforded Plaintiffs;" "never intended to comply with the terms . . . in the Settlement Agreement;" and "misrepresented facts and withheld vital information from the Plaintiffs." Compl. ¶ 43, 46, 50. Kenney Orthopedic relied on these misrepresentations to its detriment and, but for those misrepresentations, would not have agreed to execute the Settlement Agreement. Compl. ¶¶ 44-53 ("misrepresentation in the inducement claim").

On October 4, 2011, the Government filed a Partial Motion To Dismiss [The August 5, 2011 Complaint] For Lack Of Jurisdiction And Failure To State A Claim ("Gov't Mot."), as to the misrepresentation in the inducement and good faith and fair dealing claims.

On October 19, 2011, Plaintiffs filed a Motion For Temporary Restraining Order, together with three attachments – an affidavit by Mr. Kenney; an affidavit by Mr. Robert O. Williams, a VA patient; and a proposed temporary restraining order. On October 21, 2011, Plaintiffs filed a Motion To Expedite Briefing Schedule And For Hearing, with regard to the October 19, 2011 Motion For Temporary Restraining Order. On October 28, 2011, the Government filed a Response To The Motion For Temporary Restraining Order. On October 31, 2011, Plaintiffs filed a Reply. On November 1, 2011, the court issued an Order denying Plaintiffs' October 19, 2011 Motion For Temporary Restraining Order.

On November 4, 2011, Plaintiffs filed a Response To The Government's Partial Motion To Dismiss ("Pl. Resp."). On November 21, 2011, the Government filed a Reply ("Gov't Reply").

## III.     DISCUSSION.

### A.     Jurisdiction.

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act. *See* 28 U.S.C. § 1491 (2006). The Tucker Act authorizes the court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages *in cases not sounding in tort.*" 28 U.S.C. § 1491(a)(1) (emphasis added). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States* v. *Testan*, 424 U.S. 392, 398 (1976). Therefore, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages. *See Fisher* v. *United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages."). The burden of establishing jurisdiction falls on the plaintiff. *See FW/PBS, Inc.* v. *Dallas*, 493 U.S. 215, 231 (1990) (holding that the burden is on the plaintiff to allege facts sufficient to establish jurisdiction); *see also* RCFC 12(b)(1).

The court has determined that the August 5, 2011 Complaint properly invoked the court's jurisdiction as to Count I, alleging breach of contract claims, and Count II, alleging a breach of the implied covenant of good faith and fair dealing. Whether the court has jurisdiction over Count III alleging a misrepresentation in the inducement claim is discussed below.

**B.     Standing.**

The United States Supreme Court has held that "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth* v. *Seldin*, 422 U.S. 490, 498 (1975).   Standing must be determined "as of the commencement of suit." *Rothe Dev. Corp.* v. *Dep't of Def.*, 413 F.3d 1327, 1334 (Fed. Cir. 2005).  The party invoking federal jurisdiction bears the burden of establishing standing. *See Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Specifically, "a plaintiff must show [that] it has suffered an 'injury in fact' that is . . . concrete and particularized and . . . actual or imminent, not conjectural or hypothetical; . . . the injury is fairly traceable to the challenged action of the defendant; and . . . it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc.* v. *Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 180-81 (2000) (citations omitted).

The August 5, 2011 Complaint alleges that Plaintiffs have suffered an "injury in fact" that is concrete and particularized, traceable to the VA's actions in implementing the terms of the Settlement Agreement, and redressable by a favorable decision. *See* Compl. ¶¶ 30-32, 34, 38-39, 42-43, 51-53.  Accordingly, Plaintiffs have standing to seek an adjudication of the claims alleged in the August 5, 2011 Complaint.

**C.     Whether Plaintiffs' Misrepresentation In The Inducement Claim Satisfies The Particularity Requirement Of RCFC 9(b) Or Should Be Dismissed, Pursuant To RCFC 12(b)(1).**

**1.     The Government's Argument.**

The Government argues that Count III alleging a claim for misrepresentation in the inducement must be dismissed, because it is not plead with sufficient detail, as required by RCFC 9(b).[2]  Gov't Mot. at 6-7.  In addition, this claim should be dismissed, pursuant to RCFC 12(b)(1), because the court does not have subject matter jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1), to adjudicate claims "sounding in tort" and a claim for misrepresentation in the inducement sounds in tort.  Gov't Mot. at 5-6.

**2.     Plaintiffs' Response.**

Plaintiffs respond that the pleading requirements of RCFC 9(b) have been met, because, "[w]hen read in its totality, the [August 5, 2011] Complaint sets forth with detailed particularity the elements of common law fraud[.]"  Pl. Resp. at 5 (citing Compl. ¶¶ 14, 16, 18-25, 31, 40, 42,

---

[2] Rule 9(b) of the United States Court of Federal Claims requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake."  RCFC 9(b).  A claim of fraud may not merely state that a party failed to disclose a piece of information, but must specifically delineate the wrongdoing. *See Exergen Corp.* v. *Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326-27 (Fed. Cir. 2009) ("A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b).").

44; Compl., Exs. A-D).  If the court, however, requires greater particularity, Plaintiffs should be afforded the opportunity to amend the August 5, 2011 Complaint to provide more detail.  Pl. Resp. at 6.

In addition, Plaintiffs respond that the United States Court of Federal Claims has jurisdiction to adjudicate a claim for misrepresentation in the inducement, if the claim is based on an underlying contract, *i.e.*, the Settlement Agreement.  Therefore, the Government's reliance on cases where there was no underlying Government contract is misplaced.  Pl. Resp. at 4-5.

### 3.    The Government's Reply.

The Government replies that 28 U.S.C. § 1503 and § 2508 authorize the court to adjudicate fraud counterclaims *brought by* the United States.  Gov't Reply at 2.  The common law fraud claim in this case, however, is alleged *against* the United States.  Gov't Reply at 2.  In addition, since Plaintiffs have conceded that their claim for misrepresentation in the inducement sounds in tort, the claim should be dismissed.  Gov't Reply at 2.

### 4.    The Court's Resolution.

#### a.    Plaintiffs' Misrepresentation In The Inducement Claim Fails To Satisfy The Pleading Requirements Of RCFC 9(b).

Rule 9(b) of the United States Court of Federal Claims states that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." RCFC 9(b).  The purpose of this rule is to ensure that fraud is not claimed, without a factual basis and notice to the defendant of the basis for the claim.  *See In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1310 (Fed. Cir. 2011)  ("The Rule acts as a safety valve to assure that only viable claims alleging fraud . . . are allowed to proceed . . . . prevent[ing] relators [from] using discovery as a fishing expedition."); *see also Kearns* v. *Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("Rule 9(b) serves three purposes: (1) to provide defendants with adequate notice[;] (2) to protect those whose reputation would be harmed[;] and (3) to 'prohibit [ ] plaintiff[s] from unilaterally imposing . . . enormous social and economic costs absent some factual basis.'" (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996))).

Therefore, the "heightened pleading standard" of RCFC 9(b) requires that a plaintiff explain in detail the facts giving rise to a claim.  *See Juniper Networks, Inc.* v. *Shipley*, 643 F.3d 1346, 1350 (Fed. Cir. 2011).  "A pleading that simply avers the substantive elements . . . without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)."  *See Exergen Corp.* v. *Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326-27 (Fed. Cir. 2009).  Therefore, "'Rule 9(b) requires that the pleadings contain explicit rather than implied expression of the circumstances constituting fraud.'"  *Id.* at 1327.  In addition, "Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation[.]"  *Id.* Although "'knowledge' and 'intent' may be averred generally . . . the pleadings [must] allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind."  *Id.*

The August 5, 2011 Complaint and Exhibits A-D attached thereto, contain little, if any, of the required particularity.  As such, neither the Government nor the court is able to ascertain the basis for the misrepresentation claim alleged in the August 5, 2011 Complaint.  Specifically, paragraphs 19, 23-25, 31, 40, and 42 of the August 5, 2011 Complaint bear no relation to whether any misrepresentation was made.  Compl. ¶¶ 19, 23-25, 31, 40, 42.  The same can be said for Plaintiffs' Exhibits B and C that only discuss events occurring at a VA staff meeting after the Settlement Agreement was signed, and contain no evidence from which an inference can be drawn about any misrepresentations made before the Settlement Agreement was signed.  Compl., Exs. B-C.[3]

Paragraphs 16, 21-22, 45, 47, and 49-50 of the August 5, 2011 Complaint may be read to allege that the Government made misrepresentations as to unspecified facts and unspecified promises and assurances prior to the signing of the Settlement Agreement.  Compl. ¶¶ 16, 21-22, 45, 47, 49-50.  These paragraphs, however, do not contain any particularized information as to the "who, what, when, where, and how of the material misrepresentation[.]"  *See Exergen Corp.*, 575 F.3d at 1327.

Likewise, paragraphs 14, 18, 20-22, and 45-50 of the August 5, 2011 Complaint may be read to allege that the Government misrepresented its intent to comply with the Settlement Agreement in the first place.  Compl. ¶¶ 14, 18, 20-22, 45-50.  Such a misrepresentation is an actionable claim under the common law.  *See* RESTATEMENT (SECOND) OF CONTRACTS § 171(2) cmt. b (1981) ("If . . . [a] promise is made with the intention of not performing it, this implied assertion is false and is a misrepresentation."); RESTATEMENT (SECOND) OF TORTS § 530(1) cmt. c (1977) ("The rule stated in [§ 530] finds common application when the maker misrepresents his intention to perform an agreement made with the recipient.").  Neither the August 5, 2011 Complaint nor the attached Exhibits, however, recite any facts from which the court may infer intent on the part of the Government not to comply with the Settlement Agreement at the time the Government entered into it.  *See Exergen Corp.*, 575 F.3d at 1327 ("Although 'knowledge' and 'intent' may be averred generally, our precedent . . . requires that the pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind.").  Instead, Plaintiffs rely on such bald claims as are alleged in Paragraph 46 of the August 5, 2011 Complaint that "the United States never intended to comply with the terms . . . [of] the Settlement Agreement," but this is precisely the type of unsupported general statements RCFC 9(b) was issued to correct.  Compl. ¶ 46.

For these reasons, Plaintiffs are ordered to amend their August 5, 2011 Complaint to clarify the specific basis for this misrepresentation in the inducement claim.  *See Jana, Inc.* v. *United States*, 41 Fed. Cl. 735, 741 (1998) ("[T]he remedy for failure to allege fraud with the particularity required by Rule 9(b), generally, is an order requiring particularity, not dismissal.  Dismissal generally is granted only when a . . . complainant fails to amend following the objection.").

---

[3] To the contrary, the Lexington Prosthetic Staff appears to have been directed to implement the terms of the Settlement Agreement.  *See* Compl., Ex. D.

       b.    **The Court Does Not Reach The Issue Of Whether The Plaintiffs' Misrepresentation In The Inducement Claim In The August 5, 2011 Complaint Should Be Dismissed, Pursuant To RCFC 12(b)(1).**

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer* v. *United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction[.]").  In determining whether to dismiss a complaint for lack of subject-matter jurisdiction, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke* v. *United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).  Nonetheless, the plaintiff still bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Reynolds* v. *Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

As the Government points out, the United States Court of Federal Claims generally does not have jurisdiction over tort claims.  *See* 28 U.S.C. § 1491; *see also Aetna Cas. & Sur. Co.* v. *United States*, 655 F.2d 1047, 1059 (Ct. Cl. 1981) ("Tort claims, of course, are expressly beyond our Tucker Act jurisdiction.").  In *Awad* v. *United States*, 301 F.3d 1367, 1372 (Fed. Cir. 2002), however, the United States Court of Appeals for the Federal Circuit held that if "the cause of action is ultimately one arising in contract, [a tort claim arising thereunder] is properly within the exclusive jurisdiction of the Court of Federal Claims[.]"  *See also L'Enfant Plaza Props., Inc.* v. *United States*, 645 F.2d 886, 892 (Ct. Cl. 1981) (stating that "[f]or this principle to apply, there must be a 'tortious' breach of contract rather than a tort independent of the contract.").  "It is not sufficient to argue . . . that the alleged tortious conduct is 'related' in some general sense to the contractual relationship between the parties."  *L'Enfant Plaza Props.*, 645 F.2d at 892.

Regarding claims for misrepresentation in the inducement, the United States Court of Claims has observed that, "[w]e have frequently allowed recovery to claimants alleging that they entered into a contract in reliance on government misrepresentations at its preaward state." *Fla. Keys Aqueduct Auth.* v. *United States*, 231 Ct. Cl. 911, 911 (Ct. Cl. 1982); *see also Gregory Lumber Co.* v. *United States*, 9 Cl. Ct. 503, 526 (1986) (holding that, if the cause of action itself does not solely sound in tort, then "[f]or purposes of our analysis . . . a tortious breach of contract styled as a misrepresentation in the *inducement* (before the contract is formally signed) does *not* fall outside of this court's Tucker Act jurisdiction").  The United States Court of Federal Claims, however, has found some claims for misrepresentation in the inducement are tort claims independent of a contract claim, *i.e.*, that the misrepresentation claims did not arise from the breach of contract claim.  *See Phu Mang Phang* v. *United States*, 87 Fed. Cl. 321, 326 (2009), *aff'd*, 388 Fed. App'x 961, 963 (Fed. Cir. 2010) (non-precedential).

Whether the court has jurisdiction to adjudicate the misrepresentation in the inducement claim alleged in the August 5, 2011 Complaint depends on the precise nature of the claimed

misrepresentation.  For the reasons discussed above, Plaintiffs failed to state the nature of the Government's alleged misrepresentation with sufficient specificity for the court to determine whether it has jurisdiction.  Therefore, resolution of the Government's Motion to Dismiss the misrepresentation in the inducement claim is stayed, pending Plaintiffs' compliance with RCFC 9(b).

**D.    Whether Plaintiffs' Good Faith And Fair Dealing Claim Should Be Dismissed, Pursuant To RCFC 12(b)(6).**

**1.    The Government's Argument.**

The Government also moves to dismiss Plaintiffs' implied duty of good faith and fair dealing claim, because this duty does not create obligations beyond the express terms of the underlying contract.  Gov't Mot. at 7-9.  Plaintiffs' clear objective by this allegation is to create a "right to business relationships with veterans at the Lexington VA Medical Center," where no such right is guaranteed by the terms of the Settlement Agreement.  Gov't Mot. at 8.  Instead, under the Settlement Agreement, the VA agreed to "add [Kenney Orthopedic] to its list of contract vendors for prosthetics," but did not promise Plaintiffs a right to any current or future business relationship with any VA patients.  *See* Compl., Ex. A at 13.  Therefore, Plaintiffs improperly are attempting to allege a violation of the covenant of good faith and fair dealing to expand the scope of the Settlement Agreement and impose new obligations on the Government.  Gov't Mot. at 8-9.

**2.    Plaintiffs' Response.**

Plaintiffs' response does not address the Government's argument, but states that the court has jurisdiction over such a claim, as it arises under the Settlement Agreement.  Pl. Resp. at 6-10.

**3.    The Government's Reply.**

The Government replies that the Settlement Agreement is at issue in this case, not the August 15, 2006 Contract in *Kenney I* and *Kenney II*.  Gov't Reply at 4-5.  Moreover, Plaintiffs' "conclusory legal assertion" that it has a contractual right to business relationships with veterans is not supported by any provision in the Settlement Agreement.  Gov't Reply at 5-6.  Likewise, the August 5, 2011 Complaint's allegation that Kenney Orthopedic was not placed on a list of contract vendors in a timely manner is not a sufficient basis to allege a breach of the duty of good faith and fair dealing claim, because the Government's promise under the Settlement Agreement was a "non-discretionary" obligation.  Gov't Reply at 5.

**4.    The Court's Resolution.**

Dismissal, pursuant to RCFC 12(b)(6), "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy."  *Lindsay* v. *United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).  Although a complaint "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (citations omitted) (internal quotation marks omitted). In order to survive a motion to dismiss, however, the court does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."). When reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, the court "must accept as true all the factual allegations in the complaint, and . . . indulge all reasonable inferences in favor of the non-movant." *Sommers Oil Co.* v. *United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted). The court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S. Ct. at 1950.

The duty of good faith and fair dealing "is inherent in every contract," and "[t]he United States, no less than any other party, is subject to this [duty]." *Precision Pine & Timber, Inc.* v. *United States*, 596 F.3d 817, 828 (Fed. Cir. 2010). This duty requires the parties "not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." *Centex Corp.* v. *United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005). The obligation, however, does not "expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions." *Precision Pine*, 596 F.3d at 831. Our appellate court has described the duty of good faith and fair dealing as being violated when the Government engages in "some variation on the old bait-and-switch." *Id.* at 829. This occurs "when the subsequent government action is specifically designed to reappropriate the benefits the other party expected to obtain from the transaction, thereby abrogating the government's obligations under the contract." *Id.*

The August 5, 2011 Complaint alleges that Plaintiffs "had valid rights to business relationships with [VA] patients that arose directly from the Settlement Agreement[.]" Compl. ¶ 35. The Complaint further alleges that the VA interfered with this right by: (1) "intentionally diverting patients away from Kenney Orthopedic;" (2) "instructing VA employees to refuse to allow [Kenney Orthopedic] to provide any such services;" and (3) "attempting to undermine, in its entirety, the parties' Settlement Agreement." Compl. ¶ 37.

The August 5, 2011 Complaint, however, fails to identify any term in the Settlement Agreement on which to base this claim. *See, e.g.,* Compl. at ¶ 35. The most relevant provision is the requirement that the VA "add [Kenney] to its list of contract vendors for prosthetics at the Lexington VA Medical Center[.]" Compl., Ex. A at 13. This provision, however, requires only that Plaintiffs' name be placed on a list of contract vendors, which the affidavits submitted by Plaintiffs indicate was done. Compl., Exs. B-D. This provision does not convey any right to Plaintiff or guarantee Plaintiff is entitled to be afforded a business relationship with any VA patient. More importantly, the Settlement Agreement provides only that Plaintiffs were to be "treated with respect to payment *as if [they] were a non-contract provider*," not as a contract provider, because Kenney Orthopedic's former status as a vendor under the August 15, 2006 Contract was not restored. Compl., Ex. A at 13 (emphasis added).

Assuming, *arguendo*, that Plaintiffs could establish a right to a contractual relationship with VA patients, Plaintiffs still have not proffered any evidence to support their allegations that

the VA interfered with these rights.  Exhibits B and C, for example, show that Plaintiffs were allowed to provide services to VA patients with whom they had an existing relationship, contrary to Plaintiffs' assertion that they were not allowed to provide *any* services.  *Compare* Compl., Exs. B-C, *with* Compl. ¶¶ 25, 37; *see also* Compl. ¶ 24 ("Veterans . . . are entitled to continue to receive treatment from their provider of choice, once a relationship has been established with that particular provider.").  Moreover, although Exhibits B and C evidence Ms. Allawat's intent not to allow Plaintiffs to see any new prosthetics VA patients in the future, they do not indicate whether any patients were actually diverted away from Plaintiffs.  Therefore, on their face, these Exhibits do not establish that the VA interfered with "valid rights to business relationships." Compl. ¶ 35; *see also Precision Pine*, 817 F.3d at 829 ("Not all misbehavior . . . breaches the implied duty of good faith and fair dealing[.]").  Finally, Exhibit D shows that Ms. Allawat's instructions as to new patients were reversed a month later, undermining Plaintiffs' insistence that the Government's actions "destroy[ed] the reasonable expectations of [the Plaintiffs] regarding the fruits of the contract." *Centex Corp.*, 395 F.3d at 1304.

In sum, the good faith and fair dealing claims alleged in the August 5, 2011 Complaint are conclusory, without a sufficient factual basis to support a plausible claim, and therefore must be dismissed, pursuant to RCFC 12(b)(6).  *See Twombly*, 550 U.S. at 555.

## IV.    CONCLUSION.

For the foregoing reasons, the Government's October 4, 2011 Motion To Dismiss is granted-in-part and denied-in-part.  The good faith and fair dealing claim in Count II of the August 5, 2011 Complaint is dismissed.  In addition, Plaintiffs are ordered to amend the misrepresentation in the inducement claim in Count III of the August 5, 2011 Complaint to comply with the particularity requirements of RCFC 9(b).

**IT IS SO ORDERED.**

s/Susan G. Braden
**SUSAN G. BRADEN**
**Judge**