# In the United States Court of Federal Claims

No. 11-502C

Filed October 17, 2012

**TO BE PUBLISHED**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| KENNEY ORTHOPEDIC, LLC, | * | 28 U.S.C. § 1500 (2006); |
| | * | 28 U.S.C. § 1561 (2006); |
| and | * | 28 U.S.C. § 2283 (2006); |
| | * | RCFC 8 (rules of pleading); |
| JOHN M. KENNEY, | * | RCFC 9(b) (pleading fraud or mistake; |
| | * | conditions of mind); |
| Plaintiffs, | * | RCFC 12(b)(1) (subject matter jurisdiction); |
| | * | RCFC 12(b)(6) (failure to state a claim); |
| v. | * | RCFC 12(f) (motion to strike); |
| | * | RCFC 15(a)(2) (amending pleadings); |
| THE UNITED STATES, | * | RESTATEMENT (SECOND) OF CONTRACTS § |
| | * | 159 (1981). |
| Defendant. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**James M. Morris,** Morris & Morris, P.S.C., Lexington, Ky., Counsel for Plaintiffs.

**David A. Harrington,** United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

**MEMORANDUM OPINION AND ORDER**

**BRADEN,** *Judge.*

**I.   RELEVANT FACTUAL BACKGROUND.**[1]

Kenney Orthopedic, LLC ("Kenney Orthopedic") provides prosthetic and orthotic devices and services. Compl. ¶¶ 2-3. On August 15, 2006, Kenney Orthopedic entered into Contract No. V249-P-0011 (the "August 15, 2006 Contract") with the Department of Veterans

---

[1] The relevant facts are derived from Plaintiffs' August 5, 2011 Complaint ("Compl.") and Exhibits A-D attached thereto, and Plaintiffs' March 14, 2012 Amended Complaint ("Am. Compl."). Three prior decisions of the court in a related case also discussed relevant facts. *See Kenney Orthopedic, LLC* v. *United States*, 83 Fed. Cl. 35 (2008) ("*Kenney I*"); *Kenney Orthopedic, LLC* v. *United States*, 88 Fed. Cl. 688 (2009) ("*Kenney II*"); and *Kenney Orthopedic, LLC* v. *United States*, 103 Fed. Cl. 455 (2012) ("*Kenney III*").

Affairs ("VA"), to supply prosthetic and orthotic devices and services to the VA Medical Center in Lexington, Kentucky. *See Kenney II*, 88 Fed. Cl. at 691.

Thereafter, a dispute arose between Kenney Orthopedic and the VA regarding the August 15, 2006 Contract. *See Kenney I*, 83 Fed. Cl. at 36-41; *Kenney II*, 88 Fed. Cl. at 691-95. The VA asserted that Kenney Orthopedic's performance did not comply with the specifications of the August 15, 2006 Contract. *See Kenney II*, 88 Fed. Cl. at 691-95. Kenney Orthopedic maintained that the VA's view was unsupported, requested that an independent party investigate the situation, demanded an acknowledgment of the VA's efforts to defame it, and alleged that the VA violated the August 15, 2006 Contract. *Id*. at 693-95. On October 23, 2007, the VA terminated the August 15, 2006 Contract for cause, pursuant to FAR 52.212-4(m), because Kenney Orthopedic failed to respond to an August 29, 2007 "cure notice." *Id*. at 695.

On January 2, 2008, Kenney Orthopedic filed suit in the United States Court of Federal Claims alleging one breach of contract claim and three tort claims. *See Kenney I*, 83 Fed. Cl. at 41. On August 7, 2008, the tort claims were dismissed for lack of jurisdiction and the breach of contract claim was dismissed, without prejudice, because Plaintiffs had not yet satisfied the jurisdictional prerequisite of a certified claim to the Contracting Officer. *See Kenney I*, 83 Fed. Cl. at 43 (citing the Contract Disputes Act of 1978, 41 U.S.C. § 605(c)(1) (2006), now codified as amended at 41 U.S.C. § 7103(b) (2011)). On August 28, 2008, Kenney Orthopedic filed a suit in Kentucky state court, based on the same underlying dispute, against four VA employees, including Ms. Peggy Allawat. Compl., Ex. A at 1. On October 1, 2008, that case was removed to the United States District Court for the Eastern District of Kentucky, and on October 14, 2009, the United States was substituted as a defendant for all of the VA employees, except Ms. Allawat. *See Kenney* v. *Harvey*, No. 08-cv-401 (E.D. Ky. Oct. 14, 2009); Compl. ¶ 3, Ex. A at 1-2.

On January 16, 2009, Kenney Orthopedic filed a second Complaint in the United States Court of Federal Claims, this time alleging claims for breach of contract and breach of the implied covenant of good faith and fair dealing. *See Kenney II*, 88 Fed. Cl. at 696. On August 17, 2009, the court issued a Memorandum Opinion and Order denying the Government's Motion To Dismiss and determining that: Kenney Orthopedic's claims were not barred by the statute of limitations; the court had jurisdiction over Kenney Orthopedic's breach of the implied covenant of good faith and fair dealing claim; and the January 16, 2009 Complaint stated a claim for which relief could be granted. *Id*. at 701-05.

To resolve these lawsuits, the United States and Kenney Orthopedic engaged in settlement negotiations, and the parties agreed to the terms of a settlement on or about February 2, 2011 ("Agreement On Terms"). Am. Compl. ¶ 6. The parties later executed a settlement agreement. *See* Compl., Ex. A ("Settlement Agreement"). Mr. Kenney signed the Settlement Agreement on May 16, 2011; Mr. James M. Morris, Plaintiffs' counsel, on May 17, 2011; and counsel for the Government on May 27, 2011 (Mr. Carlton Sher, Assistant United States Attorney for the Eastern District of Kentucky) and May 31, 2011 (Mr. Alan J. Lo Re, Assistant Director, Authorized Representative of the Attorney General, and Mr. Gregg Paris Yates, Trial Attorney, Commercial Litigation, Civil Division, United States Department of Justice). Compl., Ex. A . Pursuant to the terms of the Settlement Agreement, Kenney Orthopedic agreed to

2

dismiss all outstanding claims against the Government, including any political subdivisions, officers, agents, or employees. Compl., Ex. A at 3-4. In exchange, Kenney Orthopedic received a $200,000 monetary payment, together with other guarantees set forth in an Addendum to the Settlement Agreement. Compl., Ex. A at 2, 13-14 ("Addendum"). Thereunder, the VA agreed to: (1) add Kenney Orthopedic to "its list of contract vendors for prosthetics at the Lexington VA Medical Center," within ten days of execution of the Settlement Agreement or on June 1, 2011, whichever was later; (2) treat Kenney Orthopedic "in the same fashion as other similarly situated offerors in the solicitation for any future contract;" and (3) "designate a Contracting Officers' [sic] Technical Representative (COTR), other than [Ms.] Peggy Allawat, [as the VA contact] for future interaction with [Kenney Orthopedic]." Compl., Ex. A at 13.

When the VA did not add Kenney Orthopedic to its list of contract vendors for prosthetics at the Lexington VA Medical Center by June 1, 2011, counsel conferred via telephone and email. Am. Compl. ¶ 40, Exs. L, M. The Government sought a stipulation that the execution date of the Settlement Agreement was the date of the last party countersignature; Plaintiffs agreed, if the Government undertook immediate efforts to add Kenney Orthopedic to the list of contract vendors. Am. Compl., Ex. L. On June 3, 2011, the Government informed Plaintiffs' counsel that Kenney Orthopedic was added to the list that would be distributed on June 6, 2011. Am. Compl., Ex. M.

On June 3, 2011, *Kenney I* and *Kenney II* were dismissed, with prejudice, following the parties' execution of the Settlement Agreement. *See* Stipulation of Dismissal, *Kenney Orthopedic, LLC* v. *United States*, No. 09-38C, (Fed. Cl. June 3, 2011), ECF No. 86.

On June 16, 2011, a VA staff meeting was held, attended by Ms. Allawat, Mr. Rick Sprinkles, an Orthotist, and Mr. Kurt A. Keeton, a Certified Orthotist. Compl. Exs. B (June 27, 2011 Sprinkles Aff.), C (June 27, 2011 Keeton Aff.). These affidavits attest that Ms. Allawat stated at the June 16, 2011 meeting that "only prosthetic patients who [had] an existing history of care" with Kenney Orthopedic could use its services. Compl., Ex. B; Compl., Ex. C. In addition, Ms. Allawat expressed her view that the next VA solicitation for bids should be worded in a manner that would be unfavorable to Kenney Orthopedic but favorable to two other vendors. Compl., Exs. B-C. Ms. Allawat stated, however, that only a new list of vendors, that included Kenney Orthopedic, should be used in the clinic. Compl., Exs. B-C.

On July 11, 2011, Ms. Dawn Greene-Lowry, a VA VISN 9 Prosthetic Manager, sent a memorandum to the Lexington, Kentucky Prosthetic Staff directing them to treat Kenney Orthopedic "as if it were a prosthetics contract provider for the near future" but advising the VA staff not to tell patients that only patients with a prior relationship with Kenney Orthopedic could use its services. Compl., Ex. D. This memorandum designated Mr. Jason Hurt as the contact person for any future issues involving Kenney Orthopedic. Compl., Ex. D.

## II.   PROCEDURAL HISTORY.

On August 5, 2011, Plaintiffs filed a third Complaint in the United States Court of Federal Claims alleging that the Government breached the Settlement Agreement by: "intentionally diverting patients from Kenney," restricting VA patients from being able to obtain

3

Kenney Orthopedic's services, and failing to add Kenney Orthopedic to the VA's list of contract vendors, within the required time frame.  Compl. ¶¶ 10-11, 15 (allegations regarding failure to add Kenney Orthopedic to list of contract vendors); *see also* Compl. ¶¶ 26-32 ("breach of contract claim").  In addition, the August 5, 2011 Complaint alleged that the VA breached the implied covenant of good faith and fair dealing intentionally by diverting VA patients away from Kenney Orthopedic and interfering with Kenney Orthopedic's ability to provide the services.  Compl. ¶¶ 33-43 ("good faith and fair dealing claim").

The August 5, 2011 Complaint also alleged that the Government: made misrepresentations to Plaintiffs "with regard to certain actions on the part of the United States, and certain protections that would be afforded Plaintiffs;" "never intended to comply with the terms . . . in the Settlement Agreement;" and "misrepresented facts and withheld vital information from the Plaintiffs."  Compl. ¶¶ 43, 46, 50.  Kenney Orthopedic relied on these misrepresentations to its detriment and, but for those misrepresentations, would not have agreed to execute the Settlement Agreement.  Compl. ¶¶ 44-53 ("misrepresentation in the inducement claim").

On October 4, 2011, the Government filed a Partial Motion To Dismiss [The August 5, 2011 Complaint] For Lack Of Jurisdiction And Failure To State A Claim ("10/4/11 Gov't Mot."), as to the misrepresentation in the inducement and good faith and fair dealing claims.

On October 19, 2011, Plaintiffs filed a Motion For Temporary Restraining Order, together with three attachments – an affidavit by Mr. Kenney; an affidavit by Mr. Robert O. Williams, a VA patient; and a proposed temporary restraining order.  On October 21, 2011, Plaintiffs filed a Motion To Expedite Briefing Schedule And For Hearing, with regard to the October 19, 2011 Motion For Temporary Restraining Order.  On October 28, 2011, the Government filed a Response.  On October 31, 2011, Plaintiffs filed a Reply.  On November 1, 2011, the court issued an Order denying Plaintiffs' October 19, 2011 Motion For Temporary Restraining Order.

On November 4, 2011, Plaintiffs filed a Response To The Government's Partial Motion To Dismiss.  On November 21, 2011, the Government filed a Reply.

On February 29, 2012, the court issued a Memorandum Opinion And Order granting-in-part and denying-in-part the Government's October 4, 2011 Partial Motion To Dismiss.  *Kenney III*, 103 Fed. Cl. at 465.  The court also dismissed the good faith and fair dealing claim in Count II of the August 5, 2011 Complaint and ordered Plaintiffs to amend the misrepresentation in the inducement claim in Count III of the August 5, 2011 Complaint to comply with the particularity requirements of RCFC 9(b).  *Id.*

On March 14, 2012, Plaintiffs filed an Amended Complaint.

On April 16, 2012, the Government filed a Motion To Dismiss For Lack Of Jurisdiction And Failure To State A Claim ("4/16/12 Gov't Mot.").  On May 9, 2012, Plaintiffs filed a Response ("5/9/12 Pl. Resp.")  On June 4, 2012, the Government filed a Reply ("6/4/12 Gov't Reply").

### III.   DISCUSSION.

####   A.   Jurisdiction.

#####   1.   Whether 28 U.S.C. § 1500 Divests The United States Court Of Federal Claims Of Jurisdiction In Light Of Plaintiffs' Suit In Kentucky State Court.

The Government asserts that the United States Court of Federal Claims does not have jurisdiction to adjudicate the claims alleged in the August 5, 2011 Complaint and the March 14, 2012 Amended Complaint because Plaintiffs have a pending suit in Kentucky state court, based upon the same operative facts. 4/16/12 Gov't Mot. at 4, 8-23 (citing *Kenney* v. *Allawat*, No. 12-Cl-1549 (filed Mar. 30, 2012) and 28 U.S.C. § 1500 (2006) ("The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.")). The Government concedes that Plaintiffs filed the state court action after filing the Complaint in this court, but argues that "order of filing does not affect the operation of 28 U.S.C. § 1500 to divest this Court of jurisdiction." *Id.* at 8 (citing *United States* v. *Tohono O'Odham Nation*, 131 S. Ct. 1723, 1729-30 (2011)). The Government urges the court to follow the dicta in *Tohono* rather than the holding in *Tecon Engineers, Inc.* v. *United States*. 4/16/12 Gov't Mot. at 8-9, 11; *see Tohono*, 131 S. Ct. at 1729-30 ("The *Tecon* holding is not presented in this case because the [United States Court of Federal Claims] action here was filed after the District Court suit."); *Tecon*, 343 F.2d 943 (Ct. Cl. 1965) (holding that section 1500 divests the United States Court of Federal Claims of jurisdiction only when another suit on the same claim already is pending in another court); *S. Corp.* v. *United States,* 690 F.2d 1368, 1369 (Fed. Cir. 1982) (*en banc*) (adopting the precedent of the United States Court of Claims as the precedent of the United States Court of Appeals for the Federal Circuit). The Government also cites to the legislative history of section 1500, as supporting an interpretation contrary to the *Tecon* case "order-of-filing" rule. *Id.* at 11-15.

Plaintiffs respond that they have sued a different defendant in state court. 5/9/12 Pl. Resp. at 3-5. Moreover, even if the court determines that this case involves a "claim for or in respect to which the plaintiff . . . has pending in any other court any suit . . . against the United States" or a person acting "directly or indirectly under the authority of the United States[,]" 28 U.S.C. § 1500, the court should follow other United States Court of Federal Claims decisions holding that *Tohono* did not overturn the *Tecon* "order-of-filing" rule. 5/9/12 Pl. Resp. at 5-7 (citing *Kaw Nation of Oklahoma* v. *United States*, 103 Fed. Cl. 613, 617-18 (2012) (listing three 2011 United States Court of Federal Claims opinions holding that the "order-of-filing" rule remains good law after *Tohono*)).

"[W]e look to the facts as they exist when a plaintiff filed his Claims Court complaint to determine if § 1500 applies." *Central Pines Land Co.* v. *United States*, No. 2012-5002, 2012 WL 4857001 at *3 (Fed. Cir. Oct. 15, 2012); *see also Harbuck* v. *United States*, 378 F.3d 1324, 1328 (Fed. Cir. 2004) ("The question of whether another claim is pending for purposes of § 1500 is determined at the time at which the suit in the [United States] Court of Federal Claims is filed,

5

not the time at which the Government moves to dismiss the action.") (internal quotation marks omitted).  In opposition to that clear binding precedent, the Government offers dicta, albeit from the Supreme Court of the United States, and legislative history.  The court is required to apply the controlling law.[2]  For these reasons, the court has determined that section 1500 does not deprive this court of jurisdiction.

> 2. **Whether The Tucker Act Grants The United States Court Of Federal Claims Jurisdiction To Adjudicate Plaintiffs' Misrepresentation In the Inducement Claim.**

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act.  *See* 28 U.S.C. § 1491 (2006).  The Tucker Act authorizes the court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists."  *United States* v. *Testan*, 424 U.S. 392, 398 (1976).  Therefore, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages.  *See Fisher* v. *United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.").  The burden of establishing jurisdiction falls on the plaintiff.  *See FW/PBS, Inc*. v. *Dallas*, 493 U.S. 215, 231 (1990) (holding that the burden is on the plaintiff to allege facts sufficient to establish jurisdiction); *see also* RCFC 12(b)(1).

The court has determined that the August 5, 2011 Complaint properly invoked the court's jurisdiction as to Count I, alleging breach of contract claims.  *See Kenney III,* 103 Fed. Cl. at 459.  The court has dismissed Count II, alleging a breach of the implied covenant of good faith and fair dealing.[3]  *Id.* at 465.  The court now turns to Count III of the March 14, 2012 Amended Complaint, alleging misrepresentation in the inducement to contract.

---

[2] The court also notes that the "order-of-filing" rule is consistent with statutes codifying the inherent power of a federal court to defeat an attempt to strip it of jurisdiction to adjudicate a case that is properly before it.  *See* 28 U.S.C. § 1651 (2006) (authorizing federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law"); 28 U.S.C. § 2283 (empowering a federal court to stay proceedings in a state court where necessary in aid of the federal court's jurisdiction).

[3] The Government notes that the March 14, 2012 Amended Complaint reasserts every claim in the August 5, 2011 Complaint, including Count II.  4/16/12 Gov't Mot. at 23-25.  Plaintiffs amended their pleading pursuant to Rule 15(a)(2) of the Rules of the United States Court of Federal Claims, which permits amendments "only with the opposing party's written consent or the court's leave."  In *Kenney III*, the court granted Plaintiffs leave to amend only the

Although the court's jurisdiction under the Tucker Act is limited to "cases not sounding in tort[,]" this limitation does not exclude all claims of misrepresentation in the inducement. *See Fla. Keys Aqueduct Auth.* v. *United States,* 231 Ct. Cl. 911, 911 (Ct. Cl. 1982) ("We have frequently allowed recovery to claimants alleging that they entered into a contract in reliance on government misrepresentations at its preaward state."); *see also Gregory Lumber Co.* v. *United States,* 9 Cl. Ct. 503, 526 (1986) (holding that, if the cause of action itself does not solely sound in tort, then "[f]or purposes of our analysis . . . a tortious breach of contract styled as a misrepresentation in the *inducement* (before the contract is formally signed) does *not* fall outside of this court's Tucker Act jurisdiction").[4]  The March 14, 2012 Amended Complaint alleges that Plaintiffs were induced to enter the Settlement Agreement by representations that the Government would: "preclud[e] [Ms.] Allawat from interfering with [Kenney Orthopedics'] treatment of patients, prompt[ly] enforce[]" the February 2, 2011 Agreement On Terms, and treat Kenney Orthopedics similarly to other VA treatment providers. Am. Compl. ¶ 54. The March 14, 2012 Amended Complaint also alleges that the VA "never intended to comply with the terms and conditions set forth in the original agreement reached on February 2, 2011 . . . [or] with the express terms and conditions of the final Settlement Agreement[.]" Am. Compl. ¶ 56; *see also* RESTATEMENT (SECOND) OF CONTRACTS § 159 cmt. d (1981) ("[A]n assertion as to one's opinion or intention, including an intention to perform a promise, is a misrepresentation if the state of mind is other than as asserted."). Because Count III of the March 14, 2012 Amended Complaint alleges that the Government made representations to induce them to enter into the Settlement Agreement, a money-mandating contract, the court has jurisdiction to adjudicate the merits of that claim.

---

"misrepresentation in the inducement claim in Count III of the August 5, 2011 Complaint[.]" 103 Fed. Cl. at 465. The Government's motion asks the court to strike the amended complaint. 4/16/12 Gov't Mot. at 27. Pursuant to Rule 12(f)(1) of the Rules of the United States Court of Federal Claims, the Government's motion is granted-in-part and denied-in-part; the court strikes from the March 14, 2012 Amended Complaint Counts II and III (paragraphs 33-53) of the August 5, 2011 Complaint. *See* RCFC 12(f) (authorizing the court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter").

[4] Of course, the United States Court of Federal Claims does not have jurisdiction to adjudicate a misrepresentation in the inducement claim against the United States in all circumstances. *See Phu Mang Phang* v. *United States,* 87 Fed. Cl. 321, 326 (2009), *aff'd,* 388 Fed. Appx. 961, 963 (Fed. Cir. 2010) (non-precedential). But the claim in *Phu Mang Phang* involved a plea agreement in a criminal case, and such agreements, though contractual, do not generally support claims for money damages. *See Sanders* v. *United States*, 252 F.3d 1329, 1334-35 (Fed. Cir. 2001). In contrast, Plaintiffs' claim involves a money-mandating Settlement Agreement. *See Holmes v. United States*, 657 F.3d 1303 (Fed. Cir. 2011) (holding that the United States Court of Federal Claims has jurisdiction to adjudicate a claim involving a money-mandating settlement agreement); Compl., Ex. A ¶ 8 (requiring the Government to make a payment of $200,000 to discharge its obligations under the Settlement Agreement).

### B. Standing.

The United States Supreme Court has held that "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth* v. *Seldin*, 422 U.S. 490, 498 (1975). Standing must be determined "as of the commencement of suit." *Rothe Dev. Corp.* v. *Dep't of Def.*, 413 F.3d 1327, 1334 (Fed. Cir. 2005). The party invoking federal jurisdiction bears the burden of establishing standing. *See Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Specifically, "a plaintiff must show [that] it has suffered an 'injury in fact' that is . . . concrete and particularized and . . . actual or imminent, not conjectural or hypothetical; . . . the injury is fairly traceable to the challenged action of the defendant; and . . . it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc.* v. *Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 180-81 (2000) (citations omitted).

The March 14, 2012 Amended Complaint alleges that Plaintiffs have suffered an "injury in fact" that is concrete and particularized, traceable to the VA's actions in implementing the terms of the Settlement Agreement, and redressable by a favorable decision. Am. Compl. ¶¶ 62-64. Accordingly, Plaintiffs have standing to seek an adjudication of the misrepresentation in the inducement to contract claim alleged in the March 14, 2012 Amended Complaint.

### C. Whether Plaintiffs' Misrepresentation In The Inducement Claim Satisfies The Particularity Requirement Of RCFC 9(b) Or Should Be Dismissed, Pursuant To RCFC 12(b)(6).

#### 1. The Government's Argument.

The Government argues that Count III, alleging misrepresentation in the inducement, must be dismissed, because it is not pleaded with sufficient detail, as required by RCFC 9(b). 4/16/12 Gov't Mot. at 26-27; 6/4/12 Gov't Reply at 6-9 (citing *Juniper Networks, Inc.* v. *Shipley*, 643 F.3d 1346, 1350 (Fed. Cir. 2011)). The Government asserts that the March 14, 2012 Amended Complaint fails to plead "the specific who, what, when, where[,] and how of " the alleged material misrepresentation, despite the court's order that Plaintiffs do so. *Id.* at 26 (quoting *Kenney III*, 103 Fed. Cl. at 461). Count III involves telephone discussions, but the March 4, 2012 Amended Complaint does not list the dates of those discussions or the names of the participants. *Id.* at 26-27 (citing Am. Compl. ¶ 34). The numerous emails appended to the March 14, 2012 Amended Complaint "show no more than the inevitable give and take between lawyers negotiating a settlement agreement in a contentious case." 6/4/12 Gov't Reply at 8.

#### 2. The Plaintiffs' Response.

Plaintiffs respond that the pleading requirements of RCFC 9 have been met, because the March 14, 2012 Amended Complaint includes a "detailed explanation of the actions undertaken by the United States, ***by and through Mr. Gregg Yates***[.]" 5/9/12 Pl. Resp. at 9. Plaintiffs do not cite to specific paragraphs or exhibits for this assertion.

### 3. The Court's Resolution.

Rule 9(b) of the United States Court of Federal Claims states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." RCFC 9(b). Claims of misrepresentation with intent to deceive must satisfy the particularity requirement of Rule 9(b).[5]

The March 14, 2012 Amended Complaint alleges that the Government misrepresented that it intended to deliver both prompt enforcement of the February 2, 2011 Agreement On Terms and compliance with the Settlement Agreement, and that these misrepresentations induced Plaintiffs to enter into the Settlement Agreement.

But, Rule 9(b) requires a complaint to allege "the specific who, what, when, where, and how" of the misrepresentation. *Juniper Networks*, 643 F.3d at 1350 (quoting *In re BP Lubricants Inc.*, 637 F.3d 1307, 1309 (Fed. Cir. 2011)). Expressions of the circumstances constituting the misrepresentation must be explicit rather than implied. *Cf.*, *King Auto., Inc.* v. *Speedy Muffler King, Inc.*, 667 F.2d 1008, 1010 (C.C.P.A. 1981) (interpreting Rule 9(b) of the Federal Rules of Civil Procedure as applied to fraud). The March 14, 2012 Amended Complaint alleges that the United States made a misrepresentation to the mediation judge, but that allegation did not specify who made the alleged misrepresentation and, therefore, fails to meet the requirements of Rule 9(b). Am. Compl. ¶ 8. Similarly, the March 14, 2012 Amended Complaint does not explicitly specify who, on April 26, 2011, "assured Plaintiffs' counsel that the Addendum [to the Settlement Agreement] would, in fact, accomplish the specific mandates of exclusion of [Ms.] Allawat, placement of the [Kenney] name on the 'preferred provider list' within ten days of acceptance of the contract or June 1, 2011, whichever was later, and treatment of Plaintiffs in a manner consistent with other non-contract Providers." Am. Compl. ¶ 29.

Moreover, the March 14, 2012 Amended Complaint does not allege any facts from which the court may infer *how* the Government's alleged action constituted a misrepresentation. Under Plaintiffs' misrepresentation theory, the Government "never intended to comply with the terms and conditions set forth in the original agreement reached on February 2, 2011 . . . [or] with the express terms and conditions of the final Settlement Agreement[.]" Am. Compl. ¶ 56. But the March 14, 2012 Amended Complaint does not allege any facts from which the court may infer that lack of intent to comply. *See Exergen Corp.*, 575 F.3d at 1327 ("[O]ur precedent . . . requires that the pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind."); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 686-87 (2009) (explaining that Rule 9(b) of the Federal Rules of Civil Procedure does not

---

[5] Rule 9(b) of the United States Court of Federal Claims requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." RCFC 9(b). A claim of fraud may not merely state that a party failed to disclose a piece of information, but must specifically delineate the wrongdoing. *See Exergen Corp.* v. *Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326-27 (Fed. Cir. 2009) ("A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b).").

relieve the plaintiff of the requirement that pleadings allege sufficient facts regarding intent). Specifically, the March 14, 2012 Amended Complaint alleges that on March 24, 2011, Mr. Yates sent an email to Mr. Morris "falsely assuring that 'we are preparing a settlement agreement draft and will forward it to you, once it is approved.'" Am. Compl. ¶ 13 & Ex. A. But, the March 14, 2012 Amended Complaint does not allege any facts from which the court may infer that the Government was not preparing a settlement agreement draft or that it did not intend to forward such a draft to Plaintiffs once the draft was approved. The March 14, 2012 Amended Complaint also alleges that on April 26, 2011, Mr. Yates "assured Plaintiffs' counsel that the Addendum [to the Settlement Agreement] would, in fact, accomplish the specific mandates of exclusion of [Ms.] Allawat, placement of the [Kenney] name on the 'preferred provider list' within ten days of acceptance of the contract or June 1, 2011, whichever was later, and treatment of Plaintiffs in a manner consistent with other non-contract Providers." Am. Compl. ¶¶ 29-32 & Ex. G (providing the specifics of the Government's assurances); Am. Compl. ¶ 56 (alleging that those assurances were misrepresentations). Again, the March 14, 2012 Amended Complaint does not allege any facts from which the court may infer that the Government did not intend to comply with those provisions. The March 14, 2012 Amended Complaint alleges the Government created an "intentional and unjustified delay of months in finalizing the terms" of the Settlement Agreement, and it alleges the Government breached the Settlement Agreement. Am. Compl. ¶ 56. But the mere existence of a delay does not establish intent to delay; likewise, a breach after contract formation does not establish that an intent to breach existed before formation. *See Iqbal*, 556 U.S. at 664 (stating that when a court considers a motion to dismiss, conclusions within a complaint "are not entitled to the assumption of truth"); *cf. Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 564 (2007) (dismissing a Sherman Act claim where the complaint alleged facts that were consistent with conspiracy, but also consistent with lawful behavior). For these reasons, the court has determined that Plaintiffs have not met their burden to plead facts plausibly showing the elements of misrepresentation in the inducement.[6] Therefore, Plaintiffs "fail[ed] to state a claim upon which relief can be granted[.]" *See* RCFC 12(b)(6); *cf. Twombly*, 550 U.S. at 549 (holding that dismissal is appropriate where a complaint fails to allege facts sufficient for an element of the claim).

IV.     CONCLUSION.

For the foregoing reasons, the Government's April 16, 2012 Motion To Dismiss For Lack of Jurisdiction And Failure To State A Claim is granted-in-part and denied-in-part; paragraphs 33-53 of the August 5, 2011 Complaint are stricken from the March 14, 2012 Amended Complaint; and Count III of the March 14, 2012 Amended Complaint is dismissed.

---

[6] The deficiencies in the March 14, 2012 Amended Complaint would exist, even if the misrepresentation in the inducement claim were not subject to the requirements of Rule 9(b), because the plausibility requirement arises under Rule 8. *See* RCFC 8(a)(2) (requiring that each claim show that the pleader is entitled to relief); *Iqbal*, 556 U.S. at 675-87 (finding the complaint deficient under Rule 8 of the Federal Rules of Civil Procedure); *see also Twombly*, 550 U.S. 544 (same).

**IT IS SO ORDERED.**

                                                s/Susan G. Braden
                                                **SUSAN G. BRADEN**
                                                **Judge**