# In the United States Court of Federal Claims

No. 11-502 C
Filed: October 31, 2014

*******************************************
\*
KENNEY ORTHOPEDIC, LLC,    \*
\*
and    \*    Settlement;
\*    Summary Judgment, RCFC 56;
JOHN M. KENNEY,    \*    48 C.F.R. § 2.101 (Contracting
\*        Officer And Contracting Officer's
Plaintiffs,    \*        Technical Representative);
\*    48 C.F.R. § 52.212-4(m)
v.    \*        (Termination For Cause).
\*
THE UNITED STATES,    \*
\*
Defendant.    \*
\*
*******************************************

**James M. Morris**, Morris & Morris, P.S.C., Lexington, Kentucky, Counsel for the Plaintiff.

**David A. Harrington**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

### MEMORANDUM OPINION AND FINAL ORDER

**BRADEN**, *Judge*.

## I.    RELEVANT FACTUAL BACKGROUND.[1]

Kenney Orthopedic, LLC and Mr. John M. Kenney (collectively herein "Kenney" or "Plaintiffs") provide prosthetic and orthotic devices and services. Compl. ¶¶ 2–3. On August 15, 2006, Kenney entered into Contract No. V249-P-0011 with the United States Department of Veterans Affairs ("VA" or "Government") to supply prosthetic and orthotic devices and services

---

[1] The relevant facts discussed herein are derived from: the August 5, 2011 Complaint ("Compl."); March 14, 2012 Amended Complaint ("Am. Compl."); June 27, 2011 Sprinkles Declaration; June 27, 2011 Keeton Declaration; the Government's February 14, 2014 Motion For Summary Judgment ("Gov't Mot.") and its Appendix ("Gov't Mot. App'x"); and prior decisions in related cases. *See Kenney Orthopedic, LLC v. United States*, 83 Fed. Cl. 35 (2008) ("*Kenney I*"); *Kenney Orthopedic, LLC v. United States*, 88 Fed. Cl. 688 (2009) ("*Kenney II*"); and *Kenney Orthopedic, LLC v. United States*, 103 Fed. Cl. 455 (2012) ("*Kenney III*").

to the VA Medical Center ("VAMC") in Lexington, Kentucky (the "August 15, 2006 Contract"). *See Kenney II*, 88 Fed. Cl. at 691.

A dispute arose between Kenney and the VA about the August 15, 2006 Contract. *See Kenney I*, 83 Fed. Cl. at 36–41; *see also Kenney II*, 88 Fed. Cl. at 691–95. The VA asserted that Plaintiffs' performance did not comply with the August 15, 2006 Contract. *See Kenney II*, 88 Fed. Cl. at 691–95. Plaintiffs maintained that the VA's view was unsupported, requested that an independent party investigate the situation, demanded an acknowledgment of the VA's efforts to defame it, and alleged that the VA violated the August 15, 2006 Contract. *Id*. at 693–95. On October 23, 2007, the VA terminated the August 15, 2006 Contract for cause, pursuant to 48 C.F.R. § 52.212-4(m), because Plaintiffs failed to respond to an August 29, 2007 "cure notice." *Id*. at 695.

On January 2, 2008, Kenney filed a Complaint in the United States Court of Federal Claims alleging a breach of contract and three tort claims. *See Kenney I*, 83 Fed. Cl. at 41. On August 7, 2008, the court dismissed the tort claims for lack of jurisdiction and dismissed the breach of contract claim, without prejudice, because Plaintiffs did not satisfy the jurisdictional prerequisite of the Contract Disputes Act, 41 U.S.C. § 605(a), that Plaintiffs submit a certified claim to the Contracting Officer ("CO") before filing suit in the United States Court of Federal Claims. *See Kenney I*, 83 Fed. Cl. at 46.[2]

On January 16, 2009, Plaintiffs filed a second Complaint in the United States Court of Federal Claims, this time alleging claims for breach of contract and for breach of the implied covenant of good faith and fair dealing. *See Kenney II*, 88 Fed. Cl. at 696. On August 17, 2009, the court issued a Memorandum Opinion and Order determining that: Plaintiffs' claims were not barred by the statute of limitations; the court had jurisdiction over Plaintiffs' breach of the implied covenant of good faith and fair dealing claim; and the January 16, 2009 Complaint stated a claim for which relief could be granted. *Id*. at 701–02, 704–05.

Thereafter, the Government and Plaintiffs engaged in negotiations resulting in a Settlement Agreement. Compl., Ex. A ("Settlement Agreement"). Therein, Plaintiffs agreed to dismiss all outstanding claims against the VA, including any other political subdivisions, officers, agents, or employees of the Government. Compl., Ex. A at 3–4. In exchange, Plaintiffs received a $200,000 payment, with other guarantees set forth in an Addendum to the Agreement. Compl., Ex. A at 2 & Addendum. Thereunder, the VA agreed to: (1) add Plaintiffs to "its list of contract vendors for prosthetics at the Lexington VA Medical Center" within 10 days of execution of the Settlement Agreement or on June 1, 2011, whichever was later; (2) treat

---

[2] On August 28, 2008, Plaintiffs also filed a suit in Kentucky state court, based on the same underlying dispute, against four VA employees, including Ms. Peggy Allawat. Compl., Ex. A at 1. On October 1, 2008, that case was removed to the United States District Court for the Eastern District of Kentucky and on October 14, 2009, the United States was substituted as a defendant for all of the VA employees, except Ms. Allawat. Compl., Ex. A at 1–2; *see also* Compl. ¶ 3. On July 5, 2011, the parties agreed to dismiss the case with prejudice, pursuant to the Settlement Agreement. *See* Agreed Order of Dismissal, *Kenney v. United States*, No. 08-401 (E.D. Ky. July 5, 2011), ECF No. 148.

Plaintiffs "in the same fashion as other similarly situated offerors in the solicitation for any future contract;" and (3) "designate a Contracting Officers' [sic] Technical Representative (COTR), other than [Ms.] Peggy Allawat, [as the VA contact] for future interaction with Plaintiff." Compl., Ex. A, Addendum.

On June 9, 2011, the VA circulated an updated list of eligible providers of prosthetics services included Plaintiffs. Gov't Mot. at 3 & Gov't Mot. App'x at 105, 108.

On June 16, 2011, Ms. Allawat attended a VA staff meeting where Mr. Rick Sprinkles, an Orthotist, and Mr. Kurt A. Keeton, a Certified Orthotist were present. Compl. Ex. B (6/27/11 Sprinkles Decl.), Compl. Ex. C (6/27/11 Keeton Decl.). These declarations attest that Ms. Allawat stated at that meeting: "only prosthetic patients who [had] an existing history of care" with Plaintiffs could use their services. Compl., Exs. B–C. In addition, Ms. Allawat stated that the next VA solicitation should favor two other vendors over Plaintiffs. Compl., Exs. B–C. But, Ms. Allawat clarified that the new list of vendors, that included Plaintiffs, would be used at the VAMC clinic. Compl., Exs. B–C.

On July 11, 2011, Ms. Dawn Greene-Lowry, the VA's VISN 9 Prosthetic Manager sent a memorandum to the Lexington, Kentucky Prosthetic Staff directing them to treat Plaintiffs "as if it were a prosthetics contract provider for the near future" and advising the VA staff not to tell patients that only patients with a prior relationship with Plaintiffs could use their services. Compl., Ex. D. This memorandum also designated Mr. Jason Hurt as "the local point of contact" for any future issues involving Plaintiffs. Compl., Ex. D.

On March 12, 2012, the VA solicited proposals for prosthetics limbs services at the VAMC. Gov't Mot. App'x at 44, 47. Plaintiffs submitted an offer and received a blanket purchase agreement ("BPA") later that month. Gov't Mot. App'x at 44, 47. On April 1, 2012, Plaintiffs' received an effective BPA number. Gov't Mot. App'x at 44.

## II.    PROCEDURAL HISTORY.

On June 3, 2011, *Kenney I* and *Kenney II* were dismissed with prejudice after the execution of a Settlement Agreement. *See* Stipulation of Dismissal, *Kenney Orthopedic, LLC v. United States*, No. 09-38C (Fed. Cl. June 3, 2011), ECF No. 86.

On August 5, 2011, Kenney filed another Complaint in the United States Court of Federal Claims ("Compl.") alleging that the VA "failed to take the actions required under the Settlement Agreement until June 26, 2011." Compl. ¶ 15. Instead, the VA's actions "were directly contrary to the promises and assurances that resulted in the negotiated Settlement Agreement[.]" Compl. ¶ 16. For example, "the VA waited until July 11, 2011 to issue any correction to the previous misrepresentations made by the VA, and to attempt to take any corrective action with regard to its breach of the parties' Settlement Agreement." Compl. ¶ 17.

On February 29, 2012, the court granted-in-part and denied-in-part the Government's Motion To Dismiss. *See Kenney Orthopedic, LLC v. United States*, 103 Fed. Cl. 455, 465 (2012) ("*Kenney III*").

On March 14, 2012, Plaintiffs filed an Amended Complaint ("Am. Compl.").  The Amended Complaint alleges that the VA breached the Settlement Agreement by failing to: (1) "limit [Ms.] Allawat's ability to interfere with Kenney's business operations"; (2) "plac[e Plaintiffs] on the preferred provider list on June 1, 2011"; and (3) "treat[ Plaintiffs] in a manner that was consistent with other treatment providers." Am. Compl. ¶ 59.

On February 14, 2014, the Government filed a Motion For Summary Judgment.  On July 15, 2014, Plaintiffs filed a Response ("Pl. Resp.").  On August 15, 2014, the Government filed a Reply ("Gov't Reply").

## III.   DISCUSSION.

### A.    Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).  The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." United States v. Testan, 424 U.S. 392, 398 (1976).

To pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, Constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages.  See Todd v. United States, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"); see also Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) ("The Tucker Act . . . does not create a substantive cause of action; . . . a plaintiff must identify a separate source of substantive law that creates the right to money damages. . . . [T]hat source must be 'money-mandating.'").  Specifically, a plaintiff must demonstrate that the source of substantive law upon which he relies "can fairly be interpreted as mandating compensation by the Federal Government." United States v. Mitchell, 463 U.S. 206, 216 (1983) (quoting Testan, 424 U.S. at 400).

Here, Plaintiffs allege "an independent contractual relationship" with the VA, i.e., the Settlement Agreement.  Therefore, the court has determined that it has jurisdiction under 28 U.S.C. § 1491 to adjudicate the claims alleged in the Amended Complaint.  See VanDesande v. United States, 673 F.3d 1342, 1351 (Fed. Cir. 2012) ("[A] settlement agreement . . . is a contract within the meaning of the Tucker Act.") (internal quotation marks and citation omitted).

**B.      The Government's February 14, 2014 Motion For Summary Judgment.**

The Amended Complaint alleges that the VA violated the essential provisions of the Settlement Agreement.  *See* Am. Compl. ¶ 39.  The Government counters that the VA complied with all the terms and conditions of the Settlement Agreement.

**1.      The Government's Argument.**

The first provision contested by Plaintiffs required the VA to add Plaintiffs to the list of contract vendors for prosthetics at the VAMC "[w]ithin 10 days of the execution of this settlement agreement, or on June 1, 2011, whichever is later."  Compl., Ex. A, Addendum.  The Settlement Agreement was executed on May 31, 2011, when the authorized representative of the Attorney General signed this document.  Gov't Mot. at 5.  Thereafter, the VA promptly disseminated a revised list of contract vendors that included Plaintiffs on June 9, 2011, within 10 days of the Settlement Agreement's May 31, 2011 execution.  Gov't Mot. at 5–6.  In fact, Plaintiffs state that clinic staff was instructed to shred all previous editions of the list and use only the new one that now had Kenney Orthopedics listed.  Pl. Resp. at 14.

The second provision contested by Plaintiffs required the VA to treat Plaintiffs "in the same fashion as other similarly situated offerors in the solicitation for any future prosthetics contract."  Compl., Ex. A, Addendum.  The VA claims that it treated Plaintiffs in the same manner as other prospective offerors in subsequent solicitations.  Gov't Mot. at 6.  For example, on April 1, 2011 the VA awarded Plaintiffs a BPA for prosthetics services.  Gov't Mot. at 6.  The VA also cites the September 25, 2013 deposition testimony of Mr. Paul Katzman, Plaintiffs' Chief Financial Officer ("CFO") who negotiated the BPA and testified that he had no reason to believe that the VA treated Plaintiffs differently from other offerors.  Gov't Mot. at 7 & Gov't App'x at 34–35.  Even if Ms. Allawat's statements were accepted as true, they "do not raise a genuine issue of material fact," because she "had no role in developing the March 2012 solicitation and had no role in evaluating offers received in response to the solicitation."  Gov't Reply at 3.  In any event, Plaintiffs "cannot prove that damages were caused by Ms. Allawat's alleged statements because the [VA] in fact awarded a contract" to Plaintiffs.  Gov't Reply at 3.

The third provision contested by Plaintiffs required the VA to "designate a [COTR], other than [Ms.] Allawat, for future interaction with Plaintiff."  Compl., Ex. A, Addendum.  The VA assigned Mr. Gregory Lemons as the CO.  Gov't Mot. at 3.  The VA also "designated Jason Hurt to be [Plaintiffs'] point of contact" until April 2012, when Plaintiffs received the BPA, and he became Plaintiffs' COTR.  Gov't Reply at 4.  Again, Mr. Katzman, Plaintiffs' CFO, testified that Plaintiffs customarily contacted Mr. Hurt about any BPA issues.  Gov't Mot. at 8.  As such, Plaintiffs concede that "Ms. Allawat has never been the contracting officer's representative or [Plaintiffs'] designated point of contact."  Gov't Reply at 4.  "[B]y definition, no COTR could be designated before a contract was awarded" to Plaintiffs.  Gov't Reply at 4 (citing 48 C.F.R. § 2.101[3]).  Therefore, Plaintiffs' assertion that the VA had to "'promptly select from among its

_____

[3] Section 2.101 defines "contracting officer" as "a person with the authority to enter into, administer, and/or terminate contracts and make related determinations and findings."  A "contracting officer's representative means an individual, including a contracting officer's

COTRs an individual to be the contact person for future interactions'" with Plaintiffs "misapprehends the nature of contract administration." Gov't Reply at 4 (quoting Pl. Resp. at 12). The VA "does not hire and maintain a pool of COTRs"; instead, COTRs are "Government employee[s] who the contracting officer has assigned to perform specific technical or administrative functions regarding a contract." Gov't Reply at 5. By promptly designating Mr. Hurt as COTR when Plaintiffs were awarded the BPM, the VA fulfilled its contractual commitment. Gov't Reply at 5.

## 2.    Plaintiffs' Response.

The first alleged breach is that, because Mr. Kenney signed the Settlement Agreement on May 16, 2011, the VA was obligated to add Kenney to the preferred provider list by June 1, 2011. Pl. Resp. at 10. In fact, the VA did not inform its employees of the modified list until June 16, 2011, when Ms. Allawat called a staff meeting of the VA Prosthetic Lab. Pl. Resp. at 13. At that meeting, Ms. Allawat allegedly advised the employees that the VA would ignore the terms of the Settlement Agreement. Pl. Resp. at 13.

Second, the VA did not treat Kenney as any other prosthetic and orthotic provider. Pl. Resp. at 14. In his June 27, 2011 Declaration, Mr. Rick Sprinkles, a VA Prosthetic Lab employee testified that he attended the June 16, 2011 staff meeting with Ms. Allawat. Pl. Resp. at 14. Mr. Sprinkles further testified that Ms. Allawat refused to call the list a "preferred/contracted vendor list" while Kenney was on it. 6/27/11 Sprinkles Decl. Instead, Ms. Allawat notified Mr. Sprinkles that Kenney was allowed only to see patients who had a pre-existing history of care. 6/27/11 Sprinkles Decl. Mr. Sprinkles also stated that Ms. Allawat told him how she planned to "omit Kenney Orthopedics from obtaining a new contract in the upcoming bid for provider contracts, and that 'she said specifically she would not have Plaintiffs as a contracted vendor and would justify this by saying they did not have as many locations or the experience with upper extremity artificial limbs as other vendors.'" 6/27/11 Sprinkles Decl.

Third, the VA failed to assign a new COTR to Kenney for "future interaction." Pl. Resp. at 19. Instead, Ms. Allawat continued to hinder Kenney's business prospects with VAMC. Pl. Resp. at 13–19, 24. The VA interpreted the Settlement Agreement as requiring the VA to assign a new COTR only after issuing a contract. Gov't Reply at 5 ("A COTR could be designated only after the award of a contract[.]"). Kenney interprets "future interaction" to encompass "interactions between the VA and [Plaintiffs] prior to the award of any future provider contract since no provider contract was in existence at the time that the agreement was reached." Pl. Resp. at 12. Kenney points to another clause of the Settlement Agreement's Addendum stating that, if a disagreement arose with the newly designated COTR, "the point of contact will be the [CO] for any contract that the VA awards at a future time, or VISN 9 Prosthetics Representative." Pl. Resp. at 12 (emphasis omitted). By explicitly anticipating a situation where a disagreement "might arise related to this designated VA employee, but where no provider contract has yet been established," both parties understood that the CO or a VISN representative would assume the role of the COTR, even without an impending contract. Pl. Resp. at 12.

---

technical representative (COTR), designated and authorized in writing by the contracting officer to perform specific technical or administrative functions."

### 3.      The Court's Resolution.

On a motion for summary judgment, the moving party must establish whether there is no genuine issue of material fact and, if not, is the moving party entitled to judgment as a matter of law.   *See Duramed Pharms., Inc. v. Paddock Labs., Inc.*, 644 F.3d 1376, 1380 (Fed. Cir. 2011); *see also* RCFC 56(a).   "The party opposing the motion must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in an affidavit by a knowledgeable affiant."   *Barmag Barmer Maschinefabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984).   Only genuine disputes of material fact that might affect the outcome of the suit preclude entry of summary judgment.   *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("As to materiality, the substantive law will identify which facts are material.   Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.   Factual disputes that are irrelevant or unnecessary will not be counted.").   The "existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."   *Id.* at 247–48 (emphasis in original).   "Courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the [summary judgment] motion."   *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks and citation omitted).

### a.      Whether There Is Any Genuine Issue Of Material Fact.

Plaintiffs devote much of their argument to discussing the parties' pre-settlement negotiations prior to the Settlement Agreement.   Pl. Resp. at 5–10.   The Settlement Agreement contains an integration clause that states, "This document, together with the Addendum, constitutes a complete integration of the agreement between the parties and supersedes any and all prior oral or written representations, understandings or agreements among or between them."   Compl., Ex. A ¶ 20.   Because the contract explicitly states that it "supersedes any and all prior oral or written representations, understandings or agreements among or between" the parties, Plaintiffs' allegations of pre-settlement representations are not issues of material fact and are irrelevant.   *See Rumsfeld v. Freedom NY, Inc.*, 329 F.3d 1320, 1329 (Fed. Cir. 2003) (holding that "no additional terms could be added through parol evidence" to an integrated document).

Although the parties do not disagree about post-Settlement Agreement factual allegations, they do differ about the legal consequences of the established facts.   They do not dispute that Plaintiffs were added to the list of contract vendors on June 9, 2011.   Gov't Mot. App'x at 105, 108.   They do not dispute that Kenney received a BPA on April 1, 2012.   Gov't Mot. App'x at 44, 47.   They do not dispute that Kenney did not file an administrative or judicial protest regarding the procurement process after it received the April 1, 2012 BPA.   Gov't Reply at 2–3.   They do not dispute that Plaintiffs' CFO conceded Plaintiffs had no reason to believe they were treated differently from similarly situated offerors.   Gov't Mot. App'x at 35 (Q: "Dr. Katzman, do you have any reason to believe that Kenney was not treated in the same fashion as any other similarly situated offerors in the solicitation of future contracts by the [VA]?"   A: "As far as contracting, no.").   In addition, they do not dispute that the VA designated Mr. Hurt to be its point of contact between the effective date of the Settlement Agreement and the April 1, 2012 BPA award to Plaintiffs.   Gov't Reply at 4.   The parties, however, differ as to whether the

Settlement Agreement was "executed" on May 17, 2011 or May 31, 2011, which is a legal determination.

> **b.    Whether The Government Is Entitled To Judgment As A Matter Of Law.**

The VA's first alleged breach of the Settlement Agreement was its alleged failure to add Plaintiffs to the approved list of contract vendors "[w]ithin 10 days of the execution of this Settlement Agreement, or June 1, 2011, whichever is later[.]" Compl., Ex. A; Am. Compl. ¶ 39. Kenney signed the Agreement on May 17, 2011.  Compl., Ex. A.  Plaintiffs argue that the Agreement was executed on May 17, 2011, and therefore, the VA was obligated to add Plaintiffs to the contract vendor list by June 1, 2011.  Am. Compl. ¶ 39.  As a matter of law, however, a contract is not executed until both parties manifest assent by signing the document.  *See Sargent v. Dep't of Health & Human Servs.*, 229 F.3d 1088, 1090 (Fed. Cir. 2000) (holding that oral statements are not binding when the parties intend to be bound only by a signed, written document); *see also* BLACK'S LAW DICTIONARY 609 (8th ed. 2004) (defining "execute" as "[t]o make (a legal document) valid by signing; to bring (a legal document) into its final, legally enforceable form").  The Government did not execute the Settlement Agreement until May 31, 2011.  Thereafter, the VA had 10 days thereafter to add Plaintiffs to the list.  By doing so on June 9, 2011, the VA complied with the Settlement Agreement, and the Government is entitled to judgment as a matter of law on this claim.

The VA's second alleged breach was its alleged failure to treat Kenney equally to other contractors.  Am. Compl. ¶ 59.  Plaintiffs have failed to offer any evidence of disparate treatment in the development and response to the VA's March 2012 solicitation.  In fact, Kenney's CFO conceded that he had no reason to believe that Kenney was treated differently from similarly situated offerors.  Gov't Mot. App'x at 34–35.  Furthermore, the contracting officer responsible for Kenney's solicitation attested that "Kenney was treated in the same fashion as all other similarly situated offerors in connection with the solicitation."  Gov't Mot. App'x at 44 (2/3/14 Lemons Decl.).  Therefore, the Government is entitled to judgment as a matter of law on this claim.

The VA's final alleged breach is the failure to "preclude [Ms. Allawat] from continuing to engage in wrongful actions intentionally designed to interfere with and damage Plaintiffs' business[.]"  Am. Compl. ¶ 56.

The Settlement Agreement stated that the VA:

> will designate a Contracting Officer's Technical Representative (COTR), other than Peggy Allawat, for future interaction with Plaintiff.  Plaintiff's point of contact within the VA for any disagreement that may arise with this designated COTR will be the [CO] for any contact that the VA awards at a future time, or VISN9 Prosthetics Representative, Memphis VA Medical Center, 1030 Jefferson Avenue, Memphis, Tennessee 38104[.]

Compl., Ex. A, Addendum.

The VA assigned Mr. Hurt as Kenney's COTR.  Gov't Mot. App'x at 105.  And, after the BPA award, Mr. Hurt became Kenney's COTR.  Gov't Mot. App'x at 45, 100, 106.  Kenney has offered no evidence that Ms. Allawat ever "interacted" with it.  The Settlement Agreement does not prohibit, as Plaintiffs contend, Ms. Allawat otherwise from "interacting" with VA staff.  Pl. Resp. at 13–24.  Plaintiffs have not offered evidence that the VA failed to "designate a [COTR], other than [Ms.] Allawat, for future interaction with Plaintiff[s]."  This is all the Settlement Agreement required.  The integration clause therein precludes the court from adding additional requirements.  *See Rumsfeld*, 329 F.3d at 1329.  Therefore, the Government is entitled to judgment as a matter of law on this claim.

## IV.    CONCLUSION.

For these reasons, the Government's February 14, 2014 Motion for Summary Judgment is granted.  *See* RCFC 56.  Accordingly, the Clerk is directed to dismiss the March 14, 2012 Amended Complaint.


**IT IS SO ORDERED.**

/s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**